JOSEPHINE S. GOODWIN, Respondent, *v.* THE MASSACHU-SETTS MUTUAL LIFE INSURANCE COMPANY, Appellant.

An unpaid premium upon a policy of life insurance is not an "indebtedness," within the meaning of the statute of Massachusetts providing for the continuance and validity of such a policy for a limited period after failure to pay the premium, and for ascertaining the period in each case; the unpaid premium, therefore, cannot be deducted from the net value of the policy in determining the amount of premium for temporary insurance.

One S. a brother of plaintiff, also being indebted to her, insured his life for her benefit with defendant; the policy required notice of claim and proof of death to be submitted to the company within ninety days after the decease of the insured.   The policy was obtained through an agent of defendant at R., whose duty it was to keep a register of deaths of persons insured, and to give notice to defendant; who was also provided by defendant with blanks to be furnished the parties for proof of death.   The agent was informed of the death of S. four days thereafter, made an entry thereof and gave notice to defendant; ten days

thereafter plaintiff called upon said agent who, in answer to an inquiry as to what was to be done, replied, that nothing could be done because "the policy had lapsed and was void." No blanks were furnished, and defendant refused to pay on the ground stated. After the expiration of the ninety days, plaintiff's counsel wrote to defendant stating that plaintiff had been misled by the information of defendant's agent in not furnishing proofs of loss, to which defendant answered that the counsel had mistaken the grounds of defendant's refusal to pay, and placed its objection on the ground of the expiration of the policy. Blanks were furnished by defendant on request, and proofs of loss made out, which were received and retained by it without objection. *Held,* that the action of defendant was a waiver of the objection that proofs were not furnished in due time, and estopped it from interposing that objection as a defense ; that the fact that the acts relied upon as a waiver transpired after the expiration of the prescribed time did not detract from their effect ; a new consideration in such case is not necessary to constitute a waiver.

*Underwood* v. *The Farmers' Joint Stock Ins. Co.* (57 N. Y., 500), distinguished and limited.

Also *held* (Miller, J., Church, Ch. J., and Rapallo, J., concurring), that the statement of the agent which misled plaintiff, and was the cause of the omission to furnish the proofs in due time, was within the sphere of his authority, and bound the plaintiff, and that it was a waiver of the condition.

Also *held,* that plaintiff occupied a position bringing her within the exception of the statute prohibiting wager policies (1 R. S., 662, § 10); and that the recovery could not be limited to the amount loaned by plaintiff to the insured.

A defense to a policy of insurance that it is a wager policy, to be available, must be set up by answer.

(Argued April 4, 1878; decided May 21, 1878.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department affirming a judgment in favor of plaintiff, entered upon the report of a referee, affirming an order and denying a motion for a new trial.

This was an action upon a policy of life insurance for $5,000, issued by defendant, a Massachusetts corporation, upon the life of William W. Selye, made payable to plaintiff. Plaintiff was a sister of the insured ; he was also her debtor at the time of the issuing of the policy to the amount of $1,200. The referee gave judgment for the amount of the policy, with interest from ninety days after receipt of proof

of loss by defendant. The further material facts appear sufficiently in the opinion.

*George Bliss*, for appellant. Defendant was not bound by anything stated by Waggoner in his conversation with plaintiff. (*Wilson* v. *Ger. Mut. Ins. Co.*, 14 N. Y., 418, 422; *Van Allen* v. *Farmers' Joint Stock Ins. Co.*, 64 id., 469; rev'g 4 Hun, 413; 6 T. R., 591; *Mersereau* v. *Phœnix Mut. Life Ins. Co.*, 66 N. Y., 274; *Blossom* v. *Lycoming Fire Ins. Co.*, 64 id., 162; *Dean* v. *Ætna Ins. Co.*, 62 id., 642; 5 Ins. L. J., March, 1876, p. 185; *Stringham* v. *St. Nicholas Ins. Co.*, 3 Keyes, 280; S. C., 4 Abb. Ct. of App. Dec., 315; *Bush* v. *Westchester Life Ins. Co.*, 63 N. Y., 531; *Lohnes* v. *Ins. Co. of N. A.*, 6 Ins. Law Jour., 472; *O'Reilly* v. *Guardian Mut. Life Ins. Co.*, 60 N. Y., 169; *De Silver* v. *State Mut. Ins. Co.*, 38 Penn., 130; *Ins. Co.* v. *Mahone*, 21 Wall., 152, 157; *Packet Co.* v. *Clough*, 20 id., 528, 540; *Anderson* v. *Rome, W. and O. R. R. Co.*, 54 N. Y., 334; *Baptist Ch.* v. *Brooklyn Fire Ins. Co.*, 28 N. Y., 153; *Luby* v. *H. R. R. R. Co.*, 17 id., 131.) A waiver, made after a contract of insurance has ceased to exist, must, to be effective, either be founded on a new consideration or amount to an estoppel. (*Smith* v. *Sar. Co. Mut. F. Ins. Co.*, 3 Hill, 508; *Evans* v. *U. S. L. Ins. Co.*, 64 N. Y., 304; *Ripley* v. *Ætna L. Ins Co.*, 30 id., 136; *Patrick* v. *Ins. Co.*, 43 N. H., 621; *Murphy* v. *People's Eq. Mut. Ins. Co.*, 7 Al., 239; *Diehl* v. *Adams Co. Mut. Ins. Co.*, 58 Penn., 452; *Beatty* v. *Lyc. Co. Mut. Ins. Co.*, 66 id., 9; *Edwards* v. *Balt. F. Ins. Co.*, 3 Gill, 176; *Allegre* v. *M'd F. Ins. Co.*, 6 H. & J., 408; *Mulhmann* v. *Nat. Ins. Co.*, 6 W. Va., 508; *Slote* v. *Ætna F. and M. Ins. Co.*, 6 Ins. L. J., 778, 783; *Cornell* v. *Mil. Mut. F. Ins. Co.*, 18 Wis., 387; *Globe Mut. L. Ins. Co.* v. *Wolff*, 16 Alb. L. J., 435.) The policy was a wager policy, and as such void, and it could not be the basis of an action. (*Russ* v. *Mut. Ben. L. Ins. Co.*, 23 N. Y., 516; *Barry* v. *Eq. L. Asso. Soc.*, 59 id., 587, 592; 1 R. S., 662; *Cammack* v. *Lewis*, 15 Wall., 643; *Stevens* v. *Warren*, 101

Mass., 564; *Franklin Life Insurance Company* v. *Hazzard*, 41 Ind., 116.)

*George F. Danforth* and *P. M. Crandall*, for respondent. Defendant, having retained the proofs of death without objection until the trial, was estopped from saying that they were not served in time. (*B'k of Oil City* v. *Guard. Mut.*, 5 L. & Ac. Ins. R., 478; *Bodle* v. *Chenango Ins. Co.*, 2 Comst., 53; *Brown* v. *Kings Co. Ins. Co.*, 31 How. Pr., 508; *Peckner* v. *Phœnix Ins. Co.*, 65 N. Y., 209; *Sherman* v. *Niagara Ins. Co.*, 46 id., 526; *Post* v. *Ins. Co.*, 43 Barb., 351.)    The authority of Waggoner as defendant's agent was sufficiently established. (*Lightbody* v. *North Amer. Ins. Co.*, 23 Wend., 22; *McEwen* v. *Mont. Mut. Ins. Co.*, 5 Hill, 185; *Post* v. *Ætna Ins. Co.*, 43 Barb., 351, 361, 365; *Sheldon* v. *Atlantic Ins. Co.*, 26 N. Y., 460, 465; *North River Bk.* v. *Aymar*, 3 Hill, 262; *Pres't, etc., of Westfield Bk.* v. *Cornen*, 37 N. Y., 320; *Bridenbecker* v. *Lowell*, 32 Barb., 9; *Leffler* v. *Field*, 50 id., 407; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 30; 10 Abb. [N. S.], 166; Green's Ultra Vires, 379; *Ins. Co.* v. *Wilkinson*, 13 Wall., 222; *Woodbury Svgs. Bk.* v. *Charter Oak Ins. Co.*, 31 Conn., 526; *Griswold* v. *Haven*, 25 N. Y., 595.)    Plaintiff had a right to rely on the statements made by Waggoner. (*Mead* v. *Bunn*, 32 N. Y., 275, 280; *Pitcher* v. *Hennessy*, 48 id., 415, 424; *Oliver* v. *Mut. Com. Ins. Co.*, 2 Cur., 277; *Cooke* v. *Nathan*, 16 Barb., 342.)    Defendant is estopped from objecting to the proofs of death, on the ground that they were not served in time. (*Post* v. *Ætna Life Ins. Co.*, 43 Barb., 365; *Phœnix Ins. Co.* v. *Taylor*, 5 Minn., 492; *East. R. R. Co.* v. *Relief Ins. Co.*, 105 Mass., 570, 578; *Sheldon* v. *Atlantic Ins. Co.*, 26 N. Y., 460–465; *Owen* v. *Farmers' Joint Stock Ins. Co.*, 57 Barb., 518; *M'Neely* v. *Cont. Life Ins. Co.*, 66 N. Y., 23; *Allegree* v. *Maryland Ins. Co.*, 6 Har. & John., 408; *Clark* v. *New England Ins. Co.*, 6 Cush., 342, 343; *Cromwell* v. *Haight*, 21 N. Y., 465; *Underhill* v. *Agawan Insurance Company*, 6 Cush., 401;

*Ætna Ins. Co.* v. *Tyler*, 16 Wend., 385; *Greenfield* v. *Massachusetts Mut. Life*, 47 N. Y., 430, 439; *Bumstead* v. *Dividend Mut. Ins. Co.*, 12 id., 81–97; *Taylor* v. *Merchants Fire Ins. Co.*, 9 How. [U. S. S. C.], 390, 403; *O'Neil* v. *Buffalo Ins. Co.*, 3 N. Y. Rep., 122.) There is nothing in the terms of the policy or in law which makes the unpaid premium a debt. (3 Black. Com., 155; *Worthington* v. *C. O. L. Ins. Co.*, 41 Conn., 416; *Culver* v. *Sisson*, 3 N. Y., 264; *Turk* v *Ridge*, 41 id., 201, 208; *Weed* v. *Coville*, 14 Barb., 242; *Salisbury* v. *Phillips*, 10 J. R., 57; *Horner* v. *Guardian Mut. Life Ins. Co.*, 67 id., 478, 481.) The " non-forfeiture law" of Massachusetts was enacted for an equitable purpose and for the benefit of the assured, and should be construed so as to secure that end if possible. (*Owen* v. *F. J. S. Ins. Co.*, 57 Barb., 518–520; *Bumstead* v. *Div. Mut. Ins. Co.*, 12 N. Y., 81–92.) The objection that the policy in suit is a wager policy should have been pleaded, and cannot be raised after trial. It was not a wager policy. (*Forbes* v. *Amer. Mut. Life Ins. Co.*, 15 Gray, 249; *Brazill* v. *Isham*, 12 N. Y., 17; *Mayor* v. *Brooklyn Fire Ins. Co.*, 4 Keyes, 465; *Valton* v. *National Fund Life Ass. Co.*, 20 N. Y., 32; *Reese* v. *Mut. Ben. Life Ins. Co.*, 23 id., 516; *Dolly* v. *The India and London Life Ins. Co.*, 80 Eng. Com. Law, 365; S. C., 28 Eng. Law & Eq., 312; *Loomis* v. *Eagle Life Ins. Co.*, 6 Gray, 396; *Lord* v. *Dall*, 12 Mass., 115; 1 Bigelow, 159; Bliss on Insurance, p. 27, § 21; also pp. 37–39, §§ 27, 28; *Rawles* v. *Amer. Ins. Co.*, 27 N. Y., 287; *Hoyt* v. *N. Y. Life Ins. Co.*, 3 Bos., 440; *Miller* v. *Eagle Life and Health Ins. Co.*, 2 E. D. Smith, 268; *Ætna Life Ins. Co.* v. *France*, 94 U. S. S. C. [4 Otto], 564, 565; *Bradford* v. *Saunders*, May 29, 1877; Exch. Div., 25 W. R. No., 32.) Plaintiff was entitled to recover the full amount of the policy. (*Phœnix Mut. Ins. Co.* v. *Bailey*, 13 Wall., 616; Bliss on Insurance, 32; *Hoyt* v. *N. Y. Life Ins. Co.*, 3 Bosw., 440; *Miller* v. *Eagle Life Ins. Co.*, 2 E. D. Smith, 268; *Rawles* v. *Amer. Ins. Co.*, 27 N. Y., 287; *Blum* v. *Conn. Mut. Life Ins. Co.*, 33 Conn., 246; 13 N. Y., 31; 13 Wall., 616; *Ætna Life*

*Ins. Co.* v. *France*, 94 U. S. S. C. [4 Otto], 564, 565; *Bradford* v. *Saunders*, Exch. Div., W. R. No., 32.)

MILLER, J.    The policy upon which this action is founded contained a provision "that in case any premium due upon this policy or any note given for part of the premium shall not be paid at the  day when payable, the policy shall thereupon cease and determine, the net value of the policy on that day shall be ascertained according to the 'combined experienced' or 'actuaries' rate of mortality, with interest at the rate of four per cent per annum, from which value shall be deducted whatever is due to the company, including any unpaid premium notes, with interest at six per cent per annum thereon ; four-fifths of the remaining value shall be considered a premium for temporary insurance, and the term for which it will insure shall be determined according to the age of the insured when said unpaid premium became payable upon the aforesaid assumption of mortality and rate of interest, and during said term, and no longer, this policy shall continue in force, provided no other cause of forfeiture exists," etc.    The policy was issued in Massachusetts, and the construction to be given to the clause above cited is governed by a special statute of that State.    This law provides for the continuance and validity of the policy for a limited period after the failure to pay  the premium, and for ascertaining what that period is to be, and then declares that "after deducting from such net value *any indebtedness to the company* or notes held by the company against the insured, which notes if given for premium shall then be canceled, four-fifths of what remains shall be considered as a net single premium of temporary insurance, and the term for which it will insure shall be determined according to the age of the party at the time of the lapse of premium, and the assumptions of mortality and interest aforesaid."    The question is, what amount is to be deducted ; and this must be determined by the construction to be given to the provisions of the policy and  of the non-forfeiture act, to which reference

has been had.   One-half year's premium had been paid upon the policy when it was issued, and when Selye, the insured, died, that period of time had elapsed, and the remaining half-year was to be paid.   The defendant claims that under the law cited, the unpaid half of the premium for the first year is to be considered as an indebtedness, and is to be deducted from the net value of the policy, and that upon this principle the policy lapsed after the expiration of the first six months.   Evidence was taken upon the trial of witnesses versed in calculations of this kind, and the defendant's actuary and another person, who was an expert in such matters, upon the assumption that the unpaid premium for the last half-year was a debt, and as such should be deducted from the net value of the policy at the close of the first six months, testify that the policy would remain in force after this time expired, which was on the thirtieth day of June and until the seventeenth day of September, and as Selye died on the first day of October it had lapsed and was of no avail.   On behalf of the plaintiff it is proved by an expert of large experience that upon the theory that the unpaid premium is not a debt the policy would be carried far beyond the time of Mr. Selye's death.   The question then recurs, was the unpaid premium an indebtedness which was to be deducted from the value of the policy under the non-forfeiture act ?   The statute in question provides that there shall be deducted " any indebtedness or notes " held by the company.   No notes were held by the defendant against the insured, and there was no direct promise by him to pay any amount, or any obligation to do so.   There was, therefore, no indebtedness within the meaning of the act.   A debt means an obligation to pay a sum of money which is due or to become due by contract — as, for instance, a note, bond or other legal obligation which the party to whom it is due may enforce by an action brought for that purpose.   No action could be maintained to recover the amount of this premium, as it rested entirely with the insured to pay or not as he might determine.   ·The policy expresses a consideration

of the whole year's premium, " as per margin," and an entry upon the margin shows that one-half year's premium was paid, and the other half payable semi-annually. This does not constitute a promise to pay, either express or implied, and in case of non-payment the policy became void, except so far as it was saved by the statute. It merely indicates that if the other half is paid at the close of the six months, the risk will be extended for another six months. It is not a loan. But if it was, as the plaintiff never received the money, it should be applied in payment of the premium, and this, with the money paid, would keep the policy in force for a year, and of course at the time of the death of Selye. In *Worthington* v. *Charter Oak Ins. Co.* (41 Conn., 416), the distinction between the premium on a policy of insurance and a debt is pointed out, and it is said that " the theory that the premium, as it becomes due, is a debt, is a fallacious one and leads to an erroneous conclusion." In the one case, the payment is entirely optional, while in the other, it may be enforced at law. The position that it was a debt, because it was agreed to be paid, is not, we think, well founded. The policy shows one-half year's premium was paid ; and if the other half was to be paid at the expiration of six months, the insurance would be continued for a year. There clearly was no agreement which obligated the insured unqualifiedly and absolutely to pay any sum at any time which was named. If the argument urged by the defendant's counsel is sound, then the same rule would apply to yearly payments which are to be made on or before December thirtieth, in each and every year, and these are debts which can be enforced at law, without regard to the wishes of the insured. According to the terms of the policy there is no promise to pay, and it rests with the insured to say how long he will continue it. He can stop it at the end of the year and determine when the policy shall cease. When he refuses to pay, the policy lapses and the insured has no further claim, except what is conferred by the non-forfeiture clause.

We have been referred to some decisions in the State of

Massachusetts, which, it is claimed, sustain the theory of the defendant's counsel; but we think they are distinguishable from the one at bar. In one of them notes were given for the premium, and in the other a memorandum with a promise to pay one-half of the premium. It thus appears that there was an obligation, in each case, acknowledging an indebtedness and binding the insured to pay, which was a debt that could be enforced; while in the case at bar no such promise exists and none is shown by the policy. The difference referred to is quite sufficient to take this case out of the rule laid down in the decisions cited. The result is, that the unpaid premium was not an indebtedness within the statute, and that the policy remained in force at the time of Selye's death.

It is claimed that the plaintiff did not comply with the condition of the policy and the provisions of the statute of the State of Massachusetts, which require that notice of the claim and proof of death shall be submitted to the company within ninety days after the decease of the person insured. It is established that the insured died on the 1st day of October, 1872, and written proof and notice was not delivered to the defendant until the 28th of January, 1874. A recurrence to the facts which have a bearing upon the question presented is essential, in order properly to determine whether any sufficient legal excuse is furnished for a failure to deliver the proof within the time required. The evidence shows that the policy was obtained by means of the agency of the defendant, at the city of Rochester. The agent there transacted such business as is usually done by agents of the company, and, in addition to other duties, he kept a register, in which he made an entry of the death of any person who died, who was insured, and gave notice of such death to the company. He also furnished blanks which were supplied to him by the defendant for proof of death, upon notice, to be delivered to the parties who had an interest in the policy, for the purpose of having the same filled out.

On or about the 5th of October, 1872, the agent was informed of the death of the insured and made an entry in his register of the same, and gave notice thereof to his principal by letter. On the fifteenth of the same month the plaintiff called upon the agent with her husband, and they were informed by him that he had heard of the death of the insured and reported it to the company; that the second premium had not been paid, and on being asked what was necessary to be done, they were told that nothing could be done, because "the policy had lapsed and was void." No blanks were furnished to make the proofs, and it appears to have been conceded by all that none was required, as by the non-payment of the semi-annual premium the policy was forfeited. The same view was taken by the defendant, and the refusal to pay was placed entirely on this ground. The matter remained in this condition until the 17th day of March, 1873, when the plaintiff, being advised that the policy had not lapsed, by her counsel, a correspondence ensued between him and the company, in which, among other things, it was stated that the plaintiff had been misled by the information of the defendant's agent in not furnishing proofs of death, and the question as to the lapse of the policy, under the non-forfeiture act of Massachusetts, was discussed. The answer of the defendant to a letter of the plaintiff's counsel states that the counsel had mistaken the grounds of the refusal of the company to recognize the claim of the plaintiff, and substantially places their objection upon the ground that the policy had expired under the non-forfeiture act. This was followed by further correspondence and an interview between the counsel and some of the officers of the company at Springfield, when the whole subject was discussed, and the only objection made was that the policy had lapsed. Blanks for the proof of death were asked for and furnished by the company, and the proofs of loss sent to the defendant and received and retained by them without any objection. From the brief summary we have given of the leading facts, it is very apparent that the question of furnishing

proofs within the time required was considered as of no sort of importance by the defendant, and the company disclaimed any other ground for a refusal to pay the amount insured by the policy than the lapse of the same. Under the evidence referred to, we are of the opinion that the defendant waived any objection as to the time of furnishing the proofs, and is estopped from interposing any such defense.

The statement of the agent of the defendant was, no doubt, the cause of the omission to present the proofs of the death of the insured, and misled the plaintiff into the mistake, if it can be so regarded, which is now urged as a defense. I think that the act of the agent, in this respect, was not outside of the limits of his authority. He had authority to receive premiums, countersign and deliver renewals, and it was a part of his bounden duty to report the death of the insured, and to receive and deliver to them, who represented the deceased, such blanks as were necessary to make out proofs of loss. He was the person to whom application would naturally be made for information as to what was necessary to be done in case of death, and who was applied to by the plaintiff for that purpose. His answers to inquiries made in regard to matters relating to his duty in the particulars referred to were not beyond his authority or in excess of the power which was conferred upon him. They related to the very subject-matter which was within the course of his usual business, and I am at a loss to see, as there was no excess of power, no stepping beyond the limit of his duty, why his responses to questions put in reference to Selye's death were not the answers and acts of his principal. They had reference to facts connected with the insurance, such as the non-payment of the premium, as required; the death of the insured and the report of the same to the company, as well as the effect of the failure to pay the premium. The lapse of the policy which, it was stated, was caused by a failure to pay the premium, as well as the effect of a statute of the State of Massachusetts, was a fact dependent upon proof to be furnished, and neither of these, in connection with the other

circumstances mentioned, can be considered as the mere expression of an opinion. He was not only called upon to speak, but it was his duty to answer the inquiries made; and whether he answered right or wrong, the company were bound by declarations thus made, which misled or deceived the applicant. The plaintiff could not well be regarded as having knowledge of the provisions of the non-forfeiture act or of the computation which might continue or cause the policy to lapse. The authorities are numerous which hold that, under such circumstances, the acts of the agent bind the principal, and that he has a perfect right to waive conditions of this description contained in a policy of insurance. (See *First Bap. Ch.* v. *Brooklyn Fire Ins Co.*, 19 N. Y., 305; *Sheldon* v. *Atlantic F. and M. Ins. Co.*, 26 id., 460; *Wood* v. *Poughkeepsie Mut. Ins. Co.*, 32 id., 619; *Bodine* v. *Ex. F. Ins. Co.*, 51 id., 117; *Pechner* v. *Phœnix F. Ins. Co.*, 65 id., 195; *Pitney* v. *Glen's Falls Ins. Co.*, id., 6; *Carroll* v. *Charter Oak Ins. Co.*, 10 Abb. [N. S.], 166; *Dohn* v. *F. J. S. Ins. Co.*, 5 Lans., 275; *Taylor* v. *Merchants' Fire Insurance Company*, 9 How. [U. S.], 390.)

The cases which are cited to sustain a different rule are distinguishable from the one at bar, as will be seen by reference to some of them. In *Van Allen* v. *The Farmers' Joint Stock Ins. Co.* (64 N. Y., 469) the case turned entirely upon the charge of the judge that the local agent had a right to waive the provisions in the policy requiring the plaintiffs to furnish proofs of loss. The proof showed but a restricted authority as agent, and upon a subsequent trial, with some additional evidence, a verdict was rendered for the plaintiff, and upon appeal to the General Term, and afterwards to this court, the judgment was affirmed. In *Merserau* v. *Phœnix Mutual Life Insurance Co.* (66 N. Y., 274) the distinct question whether the agent had the power to waive a condition forfeiting a policy of insurance, in case of non-payment of premiums, was not decided; and the case was determined by a majority of the court, upon the ground of an error in

the charge of the judge in submitting the same to the jury. In *Blossom* v. *The Lycoming Fire Ins. Co.* (64 N. Y., 162) there was no proof of any act by the defendant or its agents which could have led the plaintiff to believe that the proofs of loss would not be required, as prescribed by the policy ; and, upon the receipt of such proofs, written notice was given that the proof was too late. Under such a state of facts, there can be no serious question that there was no waiver. *Bush* v. *The Westchester Fire Ins. Co.* (63 N. Y., 531), is not analogous. The insurance agents there agreed that the loss exceeded the amount insured. There was no proof of any authority to adjust losses ; and, on the trial, the court held that, whatever the agents did in respect to the loss, the plaintiff had a right to infer they had authority to do, and their acts were made evidence of authority, without bringing home to the company any recognition or knowledge of such acts. The only authority proven was to receive proposals for insurance, and to countersign and deliver policies ; and, upon appeal, it was held that this did not extend to the adjusting of losses or to waiving the stipulated proof of loss, or to binding the company without these, and that the fact that such agent assumed to do such acts in a particular case does not establish his authority. The case is entirely dissimilar from the one at bar, and is not in point. Some other cases are cited upon this point, but we think that the precise question now considered was not distinctly presented, and that none of them are in conflict with the rule we have laid down.

We have so far considered the question whether the acts and declarations of the agent of the company were binding, and by putting the plaintiff off her guard, operate as a waiver in presenting proofs of loss. Be that as it may, however, it is not necessary in this case to determine the precise question whether the acts of the agent alone were obligatory upon the defendant, for, even if they were not binding, the defendant, with full knowledge of the acts and statements of its agent, adopted and sanctioned the same, and by their proceedings

subsequently waived any objection to the delay in the presentation of the proofs, and virtually accepted the same, as if delivered in due season.   They sent their blanks to the plaintiff for making out such proofs, induced the plaintiff to employ experts for the purpose of determining whether the policy had lapsed ;  did not return her the proofs after they were received, upon the ground that they were not received in time, but kept them, and encouraged and induced the plaintiff to bring an action to recover the amount insured. Their acts were not only a waiver of the failure to present the proofs within the time prescribed, but present all the necessary requisites of an estoppel against any such defense. They were decisive and explicit acts, showing that no objection was interposed to the time of furnishing the proofs, and entirely conclusive upon that question.   That they transpired after the time had expired does not detract from their effect or render the waiver any less emphatic and decisive.  The doctrine that there must be a new consideration after the time has elapsed for the presentation of proofs to constitute a waiver has never been upheld by this court, and it has not yet been held that the principle of estoppel, in so restricted a sense, is to be applied to cases of this character.   It is true that there are some *dicta* to that effect in the reports, but they have not received the sanction of this court, and the whole course of decision is in a contrary direction, as will be seen by reference to the reported cases.

A review of the earlier decisions in this State, relating to the question, is not required, as they are sufficiently considered in more recent cases, to which we shall have occasion to refer.   In *Owen* v. *The Farmers' J. S. Ins. Co.* (57 Barb., 518), the question now considered was directly presented. The policy required that the proof of loss should be presented within ten days after such loss.   The evidence showed that the proofs of loss were not sent to the company until some time after the expiration of the time, and after keeping them ten days they were returned to the assured, who was then informed, for the first time, that the defendant intended

to contest the claim.    It was held, not only that there was a waiver of such proof within the ten days, but that the fact that the insurers, after the time for furnishing the preliminary proofs, put their resolution to contest the claim upon other grounds than the omission to furnish such proofs, was a waiver of that ground of defense.    The decision of the General Term was affirmed upon an appeal to this court, and although the case is not reported, as the question now considered was distinctly raised, and if decided against the defendant must have led to a reversal of the judgment, and such judgment could not have been affirmed without deciding such question, no reason exists why the case last cited should not be regarded as a binding authority.    The affirmance of the judgment, therefore, puts the question at rest, and the decision cannot be disturbed without a disregard of the principle of *stare decisis*, which constitutes one of the strongest safeguards in the determination of legal controversies.    Nor do I think that there is any ground for contending that the force of this authority has been weakened or impaired by any subsequent decision.    It is true that the principle decided in the case cited is criticised in the opinion of the learned judge in *Underwood* v. *The F. J. S. Ins. Co.* (57 N. Y., 500), but a majority of the court, without expressing any opinion upon the question of waiver, concurred in reversing the judgment, upon the ground that the judge erred upon the trial in holding, as a matter of law, that the condition was waived, and that the evidence in reference thereto should have been submitted to the jury.    It may be remarked that the claim of waiver was based upon the declarations of the local agent, before the time of presenting the proofs had expired, and of the local and general agent afterwards, who received an affidavit of the insured giving an account of the loss, and the evidence of waiver was not nearly as strong as in the case at bar, and if, as was held, it was proper to submit the case to the jury, surely there was sufficient in this case to warrant the finding of the referee, that under the circumstances the defendant must be held to have waived the

right to have the proofs of death presented within the time
limited by the policy, and that the proofs given were a suffi-
cient compliance with the condition of the contract.   The
authority of 57 Barb. (*supra*) has also been sustained by
the decision of this court in *Baggerly* v. *The Farmers'
Joint Stock Insurance Company* (72 N. Y., 607), which
involved the same question, although the circumstances were
not as strong in favor of the plaintiff as those which are pre-
sented in the case at bar.   Also by the affirmance of the
judgment in *Van Allen* v. *The Farmers' Joint Stock Ins. Co.*
(72 N. Y., 604), upon the opinion of the General Term,
which is still more recent.   These decisions most manifestly
determine the question of waiver adversely to the defendant's
views.

In support of the same principle is the case of *Pechner* v.
*Phœnix Ins. Co.* (*supra*), where it is held that a condition in
a policy requiring an act to be performed or evidenced by a
statement in writing may be waived by parol.   The authori-
ties are discussed at some length by DWIGHT, C., in this case,
and the rule stated enunciated as applicable to all written
instruments not under seal.   The same view is also sustained
in *Pitney* v. *The Glen's Falls Ins. Co.* (*supra*).   See, also,
*Clark* v. *Dales* (20 Barb., 64), where it is laid down, and the
authorities are cited to sustain the position, that a new con-
sideration is not necessary to give validity to an agreement
to extend the time, and the waiver is enough for that pur-
pose.   The tendency of the modern cases to support the
doctrine that the agent may waive any of the conditions of
the policy, and bind the company by such waiver, and that
his promises and acts made within the scope of his agency,
and after knowledge of a breach of a condition, is more
decided than it has been at any previous time.   (May on
Ins., § 143; *Insurance Co.* v. *Wilkinson*, 13 Wal. [U. S.],
222, 235.)   Nor is it deemed essential that the waiver should
be explicit and pointed in its application.   (*State Ins. Co.
of Missouri* v. *Todd*, 83 Penn., 272.)   As the question con-
sidered is fully decided by the reported cases to which we

have referred, we deem it unimportant to consider other decisions cited by the learned counsel for the appellant.

When an insurance company, by means of its officers or agents, in response to a claim for a loss, fails to say anything about the time of presenting the proofs after it has expired, but claims some other defense, the presumption is that it does not intend to interpose any other besides that named, and it is a fair inference to be derived from the fact that it was silent on the subject, that it designed to waive the violation of such a condition. When called upon to adjust a loss was the time to speak by its agents or officers, and in failing to do so, and by silence, it acquiesces in a waiver of any such defense, and is, I think, estopped from interposing the same. The result of the discussion leads to the conclusion : First. That the acts of the defendant's agent while acting, in this case, directly within the sphere of his duties, amounted to a waiver of a failure to present the proofs within the time required by the policy. Second. That the defendant having, by making no objection to the delivery of such proofs within the time required, and by other acts, encouraged the plaintiff to present the same, and failed to return them on the ground that they were too late, has ratified the acts of their agent and waived any right to interpose any such defense to the plaintiff's claim.

It is also insisted that the policy in question was a wager policy, and as such was absolutely void by the Revised Statutes (1 R. S., 662). We think that the defendant, to avail itself of any such defense, should have set it up by answer, and thus given the plaintiff an opportunity to meet such an issue. In *Valton* v. *The National Fund Life Ass. Co.* (20 N. Y., 32), a motion was made upon the trial for a nonsuit upon this ground, among others, and it was held that the fact that the answer did not set up as a defense that the policy was made in contravention of the statute was a sufficient answer to the point made. If the objection had been raised by answer or on motion to dismiss the complaint, it is not apparent but what it might have been proved that

the policy was issued upon the application of the insured, or that he insured his own life, and the objection thus have been obviated.  The defense is an affirmative one and should have been presented on the trial and not afterwards.

Another answer to this point is that the insured was a brother and near relative of the plaintiff, allied by the strongest ties of kindred, and that she had a pecuniary interest in his life as a creditor.  There is sufficient in the evidence to show that he owed her the sum of $1,200, which was outstanding against him and unpaid.  Occupying the position referred to, she is brought directly within the exception of the statute which prohibits wager policies.  The plaintiff had clearly an insurable interest in the life of the insured, and the policy was not within the prohibition of the statute.  (*Rawls* v. *Am. L. Ins Co.*, 27 N. Y., 287.)  Nor under the circumstances is there any ground for holding that the recovery should be limited to the amount loaned by the plaintiff to the insured.

There was no error in any of the refusals of the referee to find as requested, nor are we able to discover, after a careful examination of the different questions made, that any valid ground is shown for a reversal of the judgment, and the same must be affirmed.

CHURCH, Ch. J., and RAPALLO, J., concur; ALLEN, FOL-GER, ANDREWS and EARL, JJ., concur in result, without expressing an opinion as to the power of the agent or the effect of his acts and declarations, being of the opinion that the defendant by its acts in inviting and inducing the plaintiff to make proofs of loss, and by accepting and retaining them without objection, is estopped from objecting that the proofs were not made in due time.

Judgment affirmed.